UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

            Plaintiff,            No. 05-CR-80798

vs.            Hon. Gerald E. Rosen

ERIC LEE HARGROVE, JR.,

            Defendant.
_____/

OPINION AND ORDER DENYING DEFENDANT'S MOTION
TO DISMISS INDICTMENT FOR VIOLATION OF DEFENDANT'S
SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL, WITHOUT PREJUDICE

      At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on 1/23/06

      PRESENT:  Honorable Gerald E. Rosen
                    United States District Judge

## I.  INTRODUCTION

Defendant Eric Lee Hargrove, Jr. was charged in a two-count indictment on September 6, 2005 with being a felon-in-possession of a firearm (Count I) and possession with intent to distribute crack cocaine (Count II).  The charges against Defendant Hargrove arise out of a search executed pursuant to a state search warrant on Hargrove's residence in Ypsilanti, Michigan more than two and a half years earlier, on January 9, 2003, by members from the Livingston and Washtenaw County Narcotic Enforcement Team (LAWNET).

1

This matter is presently before the Court on Defendant Hargrove's Motion to Dismiss the Indictment for violation of his Sixth Amendment right to a speedy trial.[1] The basis for Hargrove's speedy trial motion is the length of delay in indicting him.

## II. PERTINENT FACTS

HARGROVE'S PRE-JANUARY 2003 CRIMINAL HISTORY

Defendant Eric Lee Hargrove, Jr., has had numerous encounters with the criminal justice system over the course of his 28 years and has several felony convictions on his record. According to Michigan's Offender Tracking Information System ("OTIS"), in 1995, Hargrove was charged on two separate occasions with cocaine possession. Then in October 1997, he was again charged with possession of narcotics (cocaine) and taking a firearm from a police officer. In December 1997 he was once again charged with taking a firearm from a peace officer.

Hargrove ultimately pled guilt to the above charges and was sentenced in February 1998 to a term of imprisonment of one to four years. He was discharged from prison on all of the above-convictions as of October 13, 2000. However, on March 16, 2002,

---

[1] Unlike the Speedy Trial Act, 18 U.S.C. § 3161, the Sixth Amendment has no fixed time limit for bringing a defendant to trial. (There is no Speedy Trial Act violation in this case. The protections of the Speedy Trial Act are not triggered until the Defendant is indicted and appears before a judicial officer on the indictment. *See* 18 U.S.C. § 3161(c)(1). Once the Defendant appears on an indictment and enters a plea of not guilty, under the Speedy Trial Act, he must be tried within 70 days. *Id.* However, once a pretrial motion is filed, the speedy trial clock is stopped. In this case, Defendant first appeared on the indictment on November 9, 2005. His attorney filed the instant pretrial motion to dismiss the indictment twenty days later which stopped the statutory speedy trial clock with more than 50 days remaining.)

Hargrove once again ran afoul of the law and was once charged with felonious conduct -- fleeing, third degree, OUIL, resisting and obstructing, and driving with a suspended license. He was released on bond pending trial and was ultimately convicted and sentenced on these charges on April 30, 2003 to 18 months to 5 years imprisonment. He reported to the Michigan Department of Corrections and started serving this sentence on May 13, 2003. He was initially housed in Jackson but was subsequently sent to Camp Branch, a state facility in Coldwater, Michigan and then later to Lakeland Correctional Facility, another state facility.[2]

EVENTS GIVING RISE TO THE FEDERAL CHARGES AGAINST HARGROVE

Meanwhile, while on bond awaiting trial on the 2002 state charges, Hargrove was investigated by ATF and LAWNET officers on allegations of firearm and narcotics laws violations. A state search warrant was obtained for the search of Hargrove's residence located at 819 Gates Street in Ypsilanti, Michigan and was executed by LAWNET officers on January 9, 2003. According to the Affidavit of ATF Agent Curtis Brunson, Hargrove was found in a back bedroom in the house. The agents also found in the bedroom approximately 13 grams of crack cocaine, a vector scale, a 9mm semi-automatic pistol loaded with four live rounds of ammunition, and $941.00 in cash.

Hargrove was read his rights. He waived his rights and agreed to answer questions from the officers. When Hargrove was questioned about his relationship to the

---

[2] According to Defendant's Motion, he was transferred to Lakeland Correctional Facility on October 5, 2004 due to the federal charges lodged against him on September 23, 2003 (see discussion *infra*).

bedroom and the items found therein, he told the officers that the firearm and the cocaine found in the bedroom belonged to him. He was not, however, arrested or charged at this time.

A federal criminal Complaint was subsequently lodged against Hargrove on September 24, 2003 and a warrant for his arrest was issued on that date (*see* case no. 03-mj-80875). However, as indicated above, Hargrove was by the time serving his sentence in state prison and the warrant for his arrest on the federal complaint was never executed. According to the Government, the warrant was entered in the NCIC system by the ATF agent assigned to the case but no action was taken on the arrest warrant or complaint because at the time Defendant was incarcerated on the State charges.

According to Defendant, he was scheduled to be released on parole from state prison on October 15, 2004. However, on October 13, 2004, he was notified that the Parole Board was suspending the parole decision because it had been advised of the pending federal complaint. [*See* Parole Board Notice of Decision, attached to Defendant's Ex. III.]

The Government explains in its Response Brief that the MDOC requested a criminal history check on Defendant when he became eligible for parole and discovered the federal charges and that in response to an inquiry from the MDOC, ATF Headquarters in Washington provided MDOC with information concerning the charges, including the case agent's name and contact number. ATF Special Agent Brunson subsequently contacted the State prison and advised the State that the federal charges

against Defendant remained pending and requested that he be notified when Defendant was to be released. Agent Brunson recalls that he was told by Defendant's State prison caseworker that Defendant was not likely to be released in October 2004 as the State rarely releases prisoners on the first possible date of parole. (Apparently, the Government is relying on what the case worker allegedly told Agent Brunson to justify its failure to take any prompt action with regard to Mr. Hargrove at that time -- i.e., it did not writ him out of state prison for arraignment on the Complaint nor did it lodge a detainer with the MDOC.)

In any event, Hargrove did not challenge the suspension of the parole decision and did not raise any issue as to the federal complaint until nearly a year later.

On June 15, 2005, acting *pro se*, Hargrove filed a "Motion for Immediate Consideration; Motion to Quash the Warrant/Complaint." In this motion, Hargrove argued that the delay in prosecuting him on the federal complaint had unfairly prejudiced him and violated his Sixth Amendment right to a speedy trial. Subsequently, on July 25, 2005, a letter was sent by the MDOC to the U.S. Marshal's Office in the Eastern District of Michigan requesting information concerning the federal charges pending against Defendant.

Two and a half months later, on September 6, 2005, Hargrove was indicted by a federal grand jury and a warrant issued for Hargrove's arrest on the indictment. On October 14, 2005, he was writted out of state custody and appeared before the magistrate

5

judge for arraignment on the indictment on November 9, 2005.[3]  At his arraignment, Hargrove consented to detention pending trial.  He waived his IAD Antishuttling Rights and was returned to State custody.  On November 22, 2005, a detainer was filed with the MDOC against Defendant by the U.S. Marshal.

On November 15, 2005, the Federal defender filed her appearance on behalf of Defendant Hargrove and two weeks later, on November 29, 2005, acting on behalf of her client, defense counsel filed the instant Motion to Dismiss Indictment for Violation of Defendant's Sixth Amendment Right to a Speedy Trial.[4]

## DISCUSSION

I.  SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL

The Sixth Amendment provides that in all criminal prosecutions, "the accused shall enjoy the right to speedy and public trial."  U.S. Const. Amend. VI.  This guarantee protects "at least three basic demands of criminal justice -- to prevent undue and oppressive incarceration prior to trial; to minimize anxiety and concern accompanying

---

[3] After the issuance of the indictment but before he was brought in for his arraignment on the indictment, Hargrove filed a *pro se* § 2241 habeas corpus action against the MDOC (case no. 05-CV-73839) challenging his detention on the federal criminal complaint arguing as one of the bases for his petition the violation of his Sixth Amendment right to a speedy trial.  The case was assigned to Judge Batanni.  On November 10, 2005, Judge Battani entered an Order of Summary Dismissal of this habeas action finding that his claims had been mooted by his indictment and the scheduling of his arraignment.

[4] Defendant also filed a Motion for Leave to File Additional Pretrial Motions based upon the results of pretrial discovery "within a reasonable time after the grounds for such motions have been ascertained."  The Government has concurred in the relief requested in this motion.

public accusation; and to limit the possibility that delay will impair the ability of an accused to defend himself." *Smith v. Hooey*, 393 U.S. 374, 377-78 (1969).

Sixth Amendment speedy trial protections are triggered by a defendant's "arrest, indictment or other official accusation." *See Doggett v. United States*, 505 U.S. 647 (1992); *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 459 (1971) ("[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.")[5] It is undisputed in this case that Defendant was first "officially accused" of federal firearms and narcotics violations by way of the issuance of the federal complaint on September 24, 2003, i.e., nearly two years before he was indicted by the Grand Jury on these same charges.

The Supreme Court has articulated a four-part balancing test for courts to use in considering whether a defendant's constitutional right to a speedy trial has been violated: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right; and (4) the prejudice suffered by the defendant as a result. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972). In *United States v. Doggett, supra*, the Court reaffirmed the *Barker* test but stated the four criteria slightly differently, instructing

---

[5] The cited cases make clear that Defendant's attempt to expand the protections afforded by the Sixth Amendment to encompass the time from the date of the offense, i.e., January 9, 2003 when the search of Defendant's premises found him to be in possession of a firearm and drugs, is without merit. The Supreme Court has, in fact, expressly held that "the Speedy Trial Clause of the Sixth Amendment does not apply to the period before a defendant is indicted, arrested, or otherwise accused." *United States v. MacDonald*, 456 U.S. 1, 6 (1982); *see also United States v. Marion, supra.*

courts to consider (1) whether delay before trial was uncommonly long, (2) whether the government or the criminal defendant is more to blame for that delay, (3) whether, in due course, the defendant asserted his right to a speedy trial, and (4) whether he suffered prejudice as the delay's result. *Id.* at 651 (enumeration added). As the Court in *Barker* stressed, however, none of the four factors is necessary or sufficient in and of itself; rather "they are related factors and must be considered together with such other circumstances as may be relevant." *Barker, supra*, 407 U.S. at 533. "[T]hese factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." *Id.*

A.   LENGTH OF DELAY

The first factor, length-of-delay, "is actually a double enquiry." *Doggett supra*, 505 U.S. at 651. First, the length of the delay acts as a triggering mechanism. *See Barker*, 407 U.S. at 53. "If the length of delay is not so long as to give rise to a presumption of prejudice, the other factors need not be considered." *United States v. Graham*, 128 F.3d 372, 374 (6th Cir. 1997 (citing *Barker*, 407 U.S. at 530). Second, if the constitutional inquiry is triggered, "the length of delay is itself balanced with the other factors and may, in extreme circumstances, give rise to a strong "presumption of prejudice" affecting the fourth *Barker* factor." *United States v. Smith*, 94 F.3d 204, 209 (6th Cir. 1996) (quoting *Doggett*, 505 U.S. at 655-57.)

The Supreme Court has noted that trial delays approaching one year or more are generally sufficient to trigger the *Barker* analysis. *See Doggett*, 505 U.S. at 652 n. 1. In

this case, it has been almost two years since the Complaint was filed. This delay certainly crosses the threshold requirement of being "presumptively prejudicial delay," *see United States v. Love*, 178 F.3d 1297, 1999 WL 115523 (6th Cir. 1999) (21 month delay sufficient to trigger further inquiry), and, thus, this Court must balance the length of delay against the remaining *Barker/Doggett* factors.

B.      THE GOVERNMENT'S REASONS FOR DELAY

It is the Government's burden to explain pre-trial delay. *United States v. Brown*, 169 F.3d 344, 349 (6th Cir. 1999) (citing *United States v. Graham, supra*, 128 F.3d at 374). However, as the Supreme Court explained in *Barker* "different weights should be assigned to different reasons" for the Government's delay:

> A deliberate attempt to delay trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily, but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

407 U.S. at 531 (footnote omitted).

Here, the Government took no action whatsoever with respect to Defendant for nearly two years after first officially accusing him in the federal Complaint -- he was not "arrested," not writted out of State prison to appear in federal court to face the charges in the Complaint, and no detainer was filed during this two-year period. The Government argues that it should not be assessed any blame for this because the delay which occurred in this matter is due only "to a series of miscommunications between the U.S. Marshal's

office, the ATF and the State prison." In taking this position, however, the prosecution appears to ignore the fact the U.S. Marshal's office and the ATF are part of the same "Government" that is prosecuting the Defendant.[6] Furthermore, as the Sixth Circuit explained in *Wilson v. Mitchell*, 250 F.3d 388, 395 (6th Cir. 2001), the reason-for-delay inquiry "is not a search for a blameless party. We are instead concerned with who 'is more to blame for that delay.'" *Id.* (citing *Doggett*, 505 U.S. at 651.)

The Court finds that in this case it clearly appears that the Government caused an unnecessary delay in effecting Defendant's arrest on the Complaint. However, there is no evidence that the Government had any intention to delay the trial of Defendant in order to obtain a tactical advantage. Rather, it appears to the Court that the delay was merely due to the Government's negligence in assuming nothing had to be done on the federal charges because, at the time, Defendant was serving a state sentence. Thus, although this factor weighs against the Government, it does not weigh as heavily as a deliberate attempt to delay trial.

C.     DEFENDANT'S ASSERTION OF HIS RIGHT

---

[6] The Government also attempts to mischaracterize this matter as violation of the notice requirement of the Interstate Agreement on Detainers and relies upon this Court's decision in *United States v. Robinson*, 290 F. Supp. 2d 808 (E.D. Mich. 2003), to argue that dismissal is not an available form of relief where the notice requirement of the IAD is violated. *See* Government's Brief, pp. 8-9. However, this is not an IAD notice violation matter. Furthermore, in *Robinson*, although one of the defendant's arguments was a violation of the IAD notice provisions, unlike this case, a federal detainer <u>had</u> been timely issued; the defendant's argument was that the detainer was technically flawed -- it failed to inform the defendant that he had a right to demand trial on the federal charges before he completed his state sentence. Furthermore, the IAD violation played no part in the Court's decision on Robinson's separate Sixth Amendment speedy trial argument.

The third factor to be considered in determining whether a defendant's speedy trial rights have been violated is the defendant's assertion of his right to a speedy trial. A defendant's assertion of his right to a speedy trial, "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *United States v. Brown*, *supra*, 169 F. 3d at 350; *Barker,* 407 U.S. at 531. "Although a defendant does not waive the right to a speedy trial by failing to assert it, the degree to which the defendant has asserted the right is one of the factors to be considered in the balance." *Id.* at 532. In assessing this factor, the court considers "whether and how promptly and forcefully the defendant asserted his right to a speedy trial." *Robinson, supra*, 290 F. Supp. 2d at 819. A defendant's failure to assert his right to a speedy trial in a timely fashion weighs heavily against his Sixth Amendment claim. *United States v. Thomas*, 167 F.3d 299 (6th Cir. 1999).

In this case, this factor cuts against the Defendant's claim. Although the record evidence indicates that Hargrove was aware of the federal charges against him at least as of October 2004 when his parole hearing was adjourned due to the discovery of the pendency of the federal charges, Hargrove took no steps to demand trial on the federal charges and did not assert his speedy trial rights until June 15, 2005 when he filed a Motion for Immediate Consideration, Motion to Quash the Warrant/Complaint. Subsequently, a letter was sent from the MDOC to the Marshal's office on July 25, 2005 inquiring about the status of the federal charges against Defendant. Prior to this date, there is no indication of any attempt by Defendant to obtain information concerning the

11

federal charges. The indictment against Defendant was obtained shortly thereafter.

E.      PREJUDICE

The final *Barker* factor to be considered is whether Defendant has been prejudiced by the delay. Prejudice is determined by examining whether the defendant has suffered (1) oppressive pretrial incarceration; (2) undue anxiety and concern; and (3) impairment to his defense. *Barker*, 407 U.S. at 532.[7]

Defendant in this case claims that he has been prejudiced (1) by being deemed ineligible for community confinement while in state custody and being denied participation in state correctional programs due to the pending federal charges; (2) in suffering anxiety and concern over the federal charges; and (3) that due to the passage of time his defense to the federal charges may be impaired due to failing witness memories and the destruction of police evidence. The Court will discuss each of these claims of

---

[7] Citing *Doggett v. United States, supra*, Defendant urges the Court to find that no showing of prejudice is required here because the delay is lengthy and the Government is responsible for the delay. In *Doggett*, the Supreme Court stated that when delay is lengthy and attributable to the government's bad faith, no showing of prejudice is necessary. 505 U.S. at 657. However, here, as indicated above, there is no evidence of "bad faith" on the Government's part. Defendant states that in *United States v. Brown*, *supra*, the Sixth Circuit held that "[a] defendant is required to show prejudice only when the government has used reasonable diligence to bring him to trial." *See* Defendant's Brief, pp. 4-5. This is not an accurate statement of the holding in *Brown*. No such hard and fast rule was established in that case. Rather, the case stands for a "sliding scale" proposition: "[W]hen the government's negligence caused the delay, the need to prove prejudice diminishes as the delay increases." 169 F.3d at 350-51 (citation omitted). And, in fact, the *Brown* court was persuaded that "actual prejudice" existed in that case because a witness who Plaintiff claimed could provide exculpatory testimony on his behalf had died during the "extraordinarily long" five-and-one-half-year delay in bringing him to trial.

prejudice *seriatim*.

As indicated above, Defendant has been incarcerated in the State prison system since May 2003. His imprisonment was the result of criminal conduct which occurred prior to the arrest which gave rise to the federal firearm and narcotics charges. He was sentenced by the State to serve a term of imprisonment of 18 months to 5 years. Although Defendant claims that he would have been granted parole by the State and that his parole determination has been affected by the federal charges, this does not appear to be true. According to the Government, as of this date, Defendant has not yet been released from his State sentence. Therefore, no prejudice attributable to the delay in Defendant's federal prosecution is established with regard to his denial of parole. In any event, in *United States v. White*, 985 F.2d 271, 276 (6th Cir. 1993), the court held that delay that prevents a federal sentence from running concurrently with a previously imposed state sentence is not a factor to be considered in determining prejudice to a defendant. *See also*, *United States v. Cyphers*, 556 F.2d 630 (2nd Cir. 1977), *cert. denied*, 431 U.S. 972 (1977) (delay that prohibited the defendant from serving concurrent sentence in state and federal prison was not a substantial hardship).

Defendant claims that the delay in prosecuting the federal charges has caused him prejudice by making him ineligible for community confinement while in state custody and by being denied participation in state correctional programs. In *United States v. Robinson, supra*, the defendant raised a similar complaint relating to his ineligibility for favorable placements and programs in the state prison, as a result of delay in the

prosecution of his federal criminal matter. In denying Robinson's claims, this Court noted that "this is not the kind of prejudice cognizable under the Speedy Trial Clause." 290 F. Supp. 2d at 820 (citation omitted).

Defendant also alleges anxiety and concern regarding the federal charges and the delay. However, his claims have little credence considering the fact that he made no attempt to assert his speedy trial rights until June 2005, i.e., more than two and a half years after the incident giving rise to the federal charges which was nine months after the federal complaint was filed and at least eight months after he was notified that a determination on parole in October 2004 was cancelled because of the pending charges.

Defendant's last claim of prejudice is that his defense to the charges has been diminished by the delay. Although Defendant posits that"due to the passage of time his defense to the federal charges *may* be impaired due to failing witness memories and the destruction of police evidence," he has presented no evidence to provide factual support for this claim. The Government asserts that the police officers involved in the execution of the search warrant at Defendant's residence in January 2003 are available to testify and be cross-examined concerning the facts giving rise to this case. Further, the exhibits, including the firearm and narcotics, are available.

At the hearing on this matter, however, defense counsel pointed out that she was just recently provided with discovery and, therefore, she has not had an opportunity to ascertain the availability of potential defense witnesses or conduct interviews to find out what the witnesses remember about the events giving rise to the charges. Her further

14

investigation may substantiate Defendant's claim of impairment of his defense.

For these reasons, although the Court finds that, at present, considering the totality of the circumstances as measured by the *Barker/Doggett* factors, there is insufficient evidence to sustain Defendant's claim of a violation of his Sixth Amendment speedy trial rights, because of the Government's almost two-year delay in indicting Defendant and because that delay is attributable solely to the negligence of the Government, the Court will deny Defendant's motion to dismiss without prejudice to his right to renew this motion if, after Defendant has done discovery, he can substantiate his claim of prejudice.

## CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss Indictment is DENIED, without prejudice.

IT IS FURTHER ORDERED that Defendant's Motion for Leave to File Additional Pretrial Motions is GRANTED.

                                        s/Gerald E. Rosen  
                                            Gerald E. Rosen  
                                        United States District Judge